# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**REVERE PLASTIC SYSTEMS, LLC,**                Case No. 3:18 CV 2757

    Plaintiff, Counter-Defendant,

    v.                                           Magistrate Judge James R. Knepp II

**PLASTIC PLATE, LLC,**

    Defendant, Counter-Plaintiff.                MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Revere Plastic Systems, LLC (hereinafter "Revere"), filed a Complaint alleging: breach of contract (Count One), conversion (Count Three), willful damage or theft (Count Four), tortious interference with a business relationship (Count Five), and unjust enrichment (Count Six) against Plastic Plate, LLC. (Doc. 1-1, Complaint). Revere further requested declaratory judgment (Count Two), and attorney's fees (Count Seven). *Id.* Plastic Plate counter-claimed, alleging a single breach of contract claim. (Doc. 25, Amended Counter-Claim). Jurisdiction is proper under 28 U.S.C. § 1332. This case is before the undersigned on consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed. Civ. R. 73. (Doc. 18).

Currently pending before the Court is Plastic Plate's Motion for Judgment on the Pleadings as to its counter-claim. (Doc. 38). Revere opposed (Doc. 39), and Plastic Plate replied (Doc. 40). Also pending is Revere's Motion to Strike (Doc. 41), to which Plastic Plate responded (Doc. 42).

For the reasons stated below, Revere's Motion to Strike (Doc. 41) is GRANTED and Plastic Plate's Motion for Judgment on the Pleadings as to its counter-claim (Doc. 38) is DENIED.

## BACKGROUND

Viewing the facts in the Complaint (Doc. 1), and the Amended Counter-Complaint (Doc. 25), in the light most favorable to the non-moving party Revere, the background of this case is as follows:

At the time litigation began, Revere had been a specialty plastics manufacturer for over 50 years. (Doc. 1-1, at ¶11). At some point in 2015, Revere entered into a supply contract relationship with the Whirlpool Corporation ("Whirlpool"), for certain component parts relating to Whirlpool's washers and dryers known as the "Alpha Program". *Id.* at ¶12-13. As part of the contract, Whirlpool directed that Revere use Plastic Plate as a supplier for certain component parts within the Alpha Program. *Id.* at ¶12. Revere then incorporated these component parts into larger assemblies which were sold to Whirlpool. (Doc. 25, at ¶9).

In 2015, Plastic Plate provided Revere with four separate quotes for these parts. (Doc. 6-1, at 4, 7, 8-9)[1]. Each quote had twenty "Terms/Conditions/Assumptions" listed at the bottom. *Id.* The following were included therein:

> 2. Any purchase order issued against this quotation will be considered as acceptance and acknowledgement of our quoted terms & conditions.
>
> 3. All pricing is based on Plastic Plate, LLC being awarded the complete production chrome volume for the Washer/Dryer Trim Ring/Handle and the sourcing of the tooling package listed above.
>
> * * *
>
> 19. PPL commits to firm pricing hold for 5 years at start of first production shipments, assuming that the above stated production volumes meet a minimum EAU of at least 80% (Annual Customer Accepted Part Volumes: Washer Trim Ring – at least 140k; Dryer Trim Ring – at least 130k; Door Handle – at least 260k). If volumes do not meet this level, pricing will need to be reviewed.

*Id.*

---

1. Only the fourth and final of these quotes, marked "15-R602G", is at issue. (Doc. 6-1, at 9).

*2015 Blanket Purchase Orders*

In October 2015, Revere issued three Blanket Purchase Orders for the Alpha Program parts ("2015 Purchase Orders"). (Doc. 1-1, at ¶13); *see also* Doc. 1-1, at 21-29 (Exhibit 1). On the face of each, Revere included the following language:

> BLANKET P.O. ISSUED FOR FUTURE RELEASES-LIFE OF OEM[2] PROGRAM. . . IN ACCORDANCE WITH OEM CONTRACTS, PRICE CHANGES WILL ONLY BE ALLOWED AT THE BEGINNING OF THE QUARTER OF CALENDAR YEAR OR AS CONTRACTS PERMIT.

(Doc. 1-1, at 21, 24, 27). Each also references Plastic Plate's quote number "15-R602G". *Id.*; *see also* Doc. 6-1, at 9 (quote 15-R602G). Additionally, each Purchase Order had two pages of "Terms and Conditions" attached. *See* Doc. 1-1, at 21-29 ("Revere Industries, LLC Purchase Order General Terms and Conditions") (capitalization altered). These "Terms and Conditions" (identifying Revere as "Buyer", and Plastic Plate as "Seller") were incorporated by reference and contained the following relevant provisions:

> 1. **OFFER AND ACCEPTANCE**. This Purchase Order constitutes an offer by Revere Industries, LLC (the "Buyer") to purchase from the addressee (the "Seller") the goods or services identified on the Purchase Order on the terms and conditions set forth below. This is not a firm offer, and Buyer may revoke it at any time prior to acceptance by Seller. Seller's acknowledgment of the Purchase Order, shipment of any goods, or commencement of work pursuant to the Purchase Order shall be deemed an acceptance of this Purchase Order and all its terms and conditions. \*\*\*
>
> \* \* \*
>
> 3. **ATTACHMENTS**. Documents designated by Buyer in the body of the Purchase Order, including supplemental terms and conditions, if any, are incorporated by reference the same as if set out in full therein.
>
> 4. **CHANGES**. The Buyer reserves the right at any time to issue a written change order or amendment to the Purchase Order concerning any of the following: (a) specifications, drawings, and data incorporated in the Purchase Order where the items to be furnished are to be specially manufactured for the Buyer; (b) quantity; (c) methods of shipment or packaging; (d) place of delivery, (e) time of delivery; or (f) any other matters affecting this Purchase Order.

---

2. OEM is the "Original Equipment Manufacturer", which is Whirlpool.

5. **TERMINATION**. Buyer may terminate the Purchase Order for its convenience, in whole or in part, at any time prior to shipment by (written or electronic) notice to Seller. ***

\* \* \*

16. **BUYER'S TERMS AND CONDITIONS APPLY**. No modification or release from this Purchase Order shall be binding unless agreed to in writing by the parties and specifically labeled as a modification or release. Unless specifically agreed to otherwise by Buyer and Seller, these terms and conditions supersede any submitted by Seller in any proposal or acknowledgement.

\* \* \*

21. **REMEDIES**. In the event this Purchase Order is not complied with in any respect, Buyer may exercise any one or more of the following remedies: (a) cancel this Purchase Order; (b) require replacement of the goods; (c) recover all loss, damage and expense (including consequential damages) resulting from such failure by set-off or otherwise; (d) return excess of early deliveries to Seller at Seller's expense; (e) require delivery by any means and (f) exercise any other available remedy. Seller shall pay or otherwise be liable for any transportation, labor and/or other expense incurred in connection with the foregoing, including Buyer's attorneys' fees, costs and other changes incurred in connection with Buyer's exercise of Buyer's remedies.

\* \* \*

26. **ENTIRE AGREEMENT**. Unless superseded by a specific signed agreement between Buyer and Seller, this agreement shall include the Purchase Order, these General Terms and Conditions, and all attachments referred to in the Purchase Order or in the General Terms and Conditions, and it shall constitute the entire agreement of the parties with regard to the subject matter contained herein. All other prior or contemporaneous representations, warranties, covenants, or agreements between Seller and Buyer, or their representatives, with respect to the subject matter are hereby superseded. The term "Purchase Order" as used herein means the first and continuation pages of Revere's completed Purchase Order form, including any special provisions contained therein. This agreement may not be modified except by mutual written agreement of the parties.

*Id*. at 22-23, 25-26, 28-29. From October 2015 through April 2016, Plastic Plate shipped the product as requested by Revere in the 2015 Purchase Orders. (Doc. 1-1, at ¶16).

*2016 Purchase Orders*

In April 2016, Revere issued three updated Blanket Purchase Orders to Plastic Plate for the Alpha Program ("2016 Purchase Orders"). *Id*. at ¶17; *see also* Doc. 1-1, at 31, 34, 37 (Exhibit 2). Each Purchase Order contained language identical to that identified above in the 2015 Purchase

Orders regarding the "LIFE OF THE OEM PROGRAM" and had the same Terms and Conditions attached. *See* Doc. 1-1, at 31-39. The 2016 Purchase Orders did not reference a specific Plastic Plate quote number. *See id*. Plastic Plate again shipped the product as requested throughout 2016. *Id.* at ¶ 20.

*2017 Dispute*[3]

In March 2017, Whirlpool informed Plastic Plate that Whirlpool intended to resource the Alpha Program. (Doc. 1-1, at ¶22); (Doc. 25, at ¶17). Whirlpool also directed Revere to begin using a different supplier. (Doc. 1-1, at ¶22). In response, Plastic Plate contacted Revere and advised that if it "facilitated or cooperated with the resourcing, it would be in breach of the Supply Contract". (Doc. 25, at ¶18). Plastic Plate allegedly threatened to stop shipment under the 2016 Purchase Orders unless Revere: (1) agreed to change the payment terms to cash on delivery; and (2) agreed to as much as a 300% price increase on the parts supplied by Plastic Plate. (Doc. 1-1, at ¶23). Revere demanded Plastic Plate continue to perform under the 2016 Purchase Orders, arguing Plastic Plate had no authority to unilaterally alter the terms. *Id*. at ¶25. Shortly after Revere's demand to continue performance, Plastic Plate resumed shipping under the prices and quantitates set forth in the 2016 Purchase Orders. *Id*. at ¶26.

*2017 Purchase Orders*

In October 2017, Revere issued six updated Blanket Purchase Orders to Plastic Plate for the Alpha Program ("2017 Purchase Orders"). *Id*. at ¶27; *see also* Doc. 1-1, at 41, 44, 47, 50, 53, 56 (2017 Purchase Orders). These purchase orders were not identical to the 2015 or 2016 Purchase Orders because they omitted the "LIFE OF THE OEM PROGRAM" language contained in the

---

3. Revere argues this is the "first material breach" by Plastic Plate and is the basis for Count One in the original Complaint. (Doc. 1, at 13-14); (Doc. 39, at 23).

prior orders. *See* Doc. 1-1, at 41, 44, 47, 50, 53, 56. However, each of the 2017 Purchase Orders contained the same attached Terms and Conditions. *See id.* at 41-58. Notably, three of the 2017 Purchase Orders contained Plastic Plate's quote number "15-R602G" (*Id*. at 41, 44, 47), and three did not (*Id*. at 50, 53, 56). From October 2017 through March 2018, Plastic Plate shipped the products as requested by Revere in the 2017 Purchase Orders. *Id.* at 32-33.

*2018 Dispute*

In March 2018, Plastic Plate allegedly renewed its 2017 threat to stop shipment on the component parts unless Revere: (1) agreed to change the payment terms to cash on delivery; and (2) agreed to as much as a 300% price increase on the parts supplied by Plastic Plate. *Id*. at ¶34-35. Revere notified Plastic Plate that its refusal to ship threatened to cause a shutdown of Whirlpool's production for the Alpha Program. *Id*. at ¶38. Plastic Plate refused to ship unless Revere agreed to a 300% price increase and payment in advance of any shipment. *Id*. at ¶41. Revere paid Plastic Plate approximately $560,000 (under protest) in order to prevent supply interruption. *Id*. at ¶42. Upon receiving the payment, Plastic Plate released Revere's inventory. *Id*. at ¶43.

## STANDARD OF REVIEW

In reviewing a motion for judgment on the pleadings, the Court tests the complaint's legal sufficiency. "The standard of review applicable to a motion for judgment on the pleadings . . . is the same . . . standard applicable to a motion to dismiss under Rule 12(b)(6)." *Hayward v. Cleveland Clinic Found*., 759 F.3d 601, 608 (6th Cir. 2014) (citing *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 511–12 (6th Cir. 2001)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[T]he court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and

exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the non-moving party. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

## DISCUSSION

Motion to Strike (Doc. 41)

In its Reply (Doc. 40), Plastic Plate attached an affidavit and an "Exhibit C" (confidential documents to be produced in-camera); these documents are not contained in the original pleadings. *See* Docs. 40-2, 40-3. In response, Revere filed a Motion to Strike, arguing such extrinsic evidence is improper on a motion under Federal Rule of Civil Procedure 12(c). (Doc. 41). Revere argues the Court should either: (1) strike the offending materials; or (2) convert motion to one for summary judgment, and provide Revere an opportunity to respond with its own extrinsic evidence. (Doc. 41, at 2). Plastic Plate responded (Doc. 42), arguing the materials were not improper because they were offered in response to a legal theory presented by Revere in its opposition. However, Plastic Plate asserts that if the Court finds the documents to be improperly submitted, the Court should strike them, rather than convert the motion to one for summary judgment. *Id.* at 6.

The Court retains the discretion, as Revere pointed out, to either: (1) strike the offending materials; or (2) consider the materials and convert the motion to one for summary judgment under Federal Civil Rule 56. *See Max Arnold & Sons, LLC, v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2004) ("[I]t is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c)."). Here, Plastic Plate

attempted to introduce an affidavit and other confidential documents for the first time in its Reply brief. (Docs. 40-2, 40-3). If these documents were central to Plastic Plate's claim, as it contends, they should have been presented at first opportunity in the counter-complaint. This evidence is indeed outside of the pleadings and improperly presented by Plastic Plate in Reply, hindering any opportunity for Revere to respond. For these reasons, the Court exercises its discretion and hereby strikes the offending materials and considers the motion as originally filed for judgment on the pleadings under Federal Civil Rule 12(c).

Motion for Judgment on the Pleadings (Doc. 38)

In its Motion for Judgment on the Pleadings (Doc. 38), Plastic Plate argues that Revere had a fully enforceable contractual obligation not to resource the component part manufacturing to another supplier as evidenced by the "LIFE OF THE OEM PROGRAM" language in Revere's Purchase Orders, and Revere breached said agreement by "facilitat[ing] or cooperat[ing] with resourcing" production. (Doc. 38-1, at 12-16). Plastic Plate argues that this "non-resourcing" agreement was also memorialized within a master "supply agreement" which consisted of: (1) Plastic Plate's price quotes; and (b) Revere's Purchase Orders (as one unit, not singly). (Doc. 25, at ¶11-14).

Revere counters that the "LIFE OF THE OEM PROGRAM" language within its Purchase Orders is not a commitment not to resource the component parts to another manufacturer. (Doc. 39, at 1-2). Further, Revere argues that no single "supply agreement" existed and that a plain reading of the documents shows that the quotes and purchase orders each constituted separate agreements. *Id*. at 15-22. Finally, Revere argues that its pleadings in the original Complaint (Doc. 1-1) show Plastic Plate was the first materially breaching party, which precludes Plastic Plate from obtaining the relief sought. (Doc. 39, at 22-23). For the reasons set forth below, the undersigned

finds Revere has pled sufficient facts to survive Plastic Plate's motion on the pleadings and the Court DENIES the motion (Doc. 38).

*The Single "Supply Agreement" Argument*

Under Ohio law, essential elements of a contract include: an offer, acceptance, the manifestation of mutual assent, and consideration (the bargained-for legal benefit or detriment). *Res. Title Agency, Inc v. Morreale Real Estate Servs., Inc*., 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004) (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)). Contract interpretation is a question of law. *Maurer v. Joy Technologies*, 212 F.3d 907, 914 (6th Cir. 2000). And "[t]he intent of the parties is best determined by the plain language of the contract." *U.S. v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003).

Central to Plastic Plate's claim is the contention that a single "supply agreement" or "supply contract" existed between the parties. As evidence of this, Plastic Plate points out that some of Revere's Purchase Orders reference Plastic Plate's quote number: "15-R602G". (Doc. 38-1, at 13-14). Plastic Plate argues this means the quote was incorporated into the Purchase Orders by reference and both must be construed together as one contract. In support, it cites *KeyBank Nat'l Ass'n v. Sw. Greens of Ohio*, LLC, 988 N.E.2d 32, 39 (Ohio Ct. App. 2013), which states: "When a document is incorporated into another by reference, both instruments must be read and construed together." Revere counters that, because there was no explicit reference to incorporation, Plastic Plate's argument fails.

"To incorporate a document, [a] contract 'must explicitly, or at least precisely, identify the written material [being] incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'" *Selective Way Ins. Co. v. Glasstech, Inc*., 2018 WL 1871092, at *2 (N.D. Ohio) (quoting *Volovetz v. Tremco Barrier*

9

*Solutions*, 74 N.E.3d 743, 751-52 (Ohio Ct. App. 2016)). Here, the price quote "15-R602G" appears on the face of half of the Purchase Orders. *See* Doc. 1-1, at 21, 24, 27, 41, 44, 47. This price quote specifically subjects any Purchase Orders issued therefrom to its stated terms and conditions:

> 2. Any purchase order issued against this quotation will be considered as acceptance and acknowledgement of our quoted terms & conditions.

*See* Doc. 6-1, at 9. Language within Revere's Purchase Orders also (unambiguously) incorporates the quotations:

> 3. **ATTACHMENTS**. Documents designated by Buyer in the body of the Purchase Order, including supplemental terms and conditions, if any, are incorporated by reference the same as if set out in full therein.

(Doc. 1-1, at 22, 25, 28, 42, 45, 48). For these reasons, the Court finds that Plastic Plate quote 15-R602G, and Revere's Purchase Orders which reference it (Doc. 1-1, at 21, 24, 27, 41, 44, 47), should be read together.

The next relevant question becomes: are these documents one single "supply agreement" as Plastic Plate contends, or does each Purchase Order (with the incorporated quote) stand on its own as a separate contract? Under Ohio law – which mirrors the Uniform Commercial Code ("UCC") – each Purchase Order constitutes a separate "offer to buy goods for prompt or current shipment" and "invit[es] acceptance in any manner and by any medium reasonable in the circumstances" – in this case "by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." O.R.C. § 1302.09 (UCC 2-206); *see also Am. Bronze Corp. v. Streamway Prods.*, 456 N.E.2d 1295, 1300 (Ohio Ct. App. 1982) ("Generally, the submission of a purchase order is viewed as being an offer which then may be accepted or rejected by the seller."). Here, Revere presented Plastic Plate with twelve separate Purchase Orders (Doc. 1-1, at 21-58), which Plastic Plate "accepted" *individually* through performance by shipping the

products in the type and quantity requested by *each* separate order (Doc. 1-1, at ¶16, 20, 26, 32-33). Thus, the Court reads Revere's six Purchase Orders which reference Plastic Plate quote 15-R602G (Doc. 1-1, at 21, 24, 27, 41, 44, 47), as *six separate contracts* each consisting of: (1) the quote; and (2) the Purchase Order.

*The "Non-resourcing Agreement" and Controlling Terms*

Plastic Plate's breach of contract claim rests on the foundation that specific language within its price quote, and the Purchase Orders, established a "non-resourcing agreement" and Revere breached said agreement by resourcing the parts.

In support, Plastic Plate points to the language in Revere's 2015-16 Purchase Orders:

> BLANKET P.O. ISSUED FOR FUTURE RELEASES-LIFE OF OEM PROGRAM. . . IN ACCORDANCE WITH OEM CONTRACTS, PRICE CHANGES WILL ONLY BE ALLOWED AT THE BEGINNING OF THE QUARTER OF CALENDAR YEAR OR AS CONTRACTS PERMIT.

(Doc. 1-1, at 21, 24, 27, 31, 34, 37). Plastic Plate alleges this "LIFE OF OEM PROGRAM" language constitutes an "unambiguous commitment not to resource". (Doc. 38-1, at 12). Revere makes a few convincing points in rebuttal.

However, the Court must preliminarily determine which set of terms and conditions control. Revere's Purchase Orders expressly note:

> 16.  **BUYERS TERMS AND CONDITIONS APPLY**. No modification or release from this Purchase Order shall be binding unless agreed to in writing by the parties and specifically labeled as a modification or release. *Unless specifically agreed to otherwise by Buyer and Seller, these terms and conditions supersede any submitted by Seller in any proposal or acknowledgement.*
> * * *
> 26.  **ENTIRE AGREEMENT**. Unless superseded by a specific signed agreement between Buyer and Seller, this agreement shall include the Purchase Order, these General Terms and Conditions, and all attachments referred to in the Purchase Order or in the General Terms and Conditions, and it shall constitute the entire agreement of the parties with regard to the subject matter contained herein. *All other prior or contemporaneous representations, warranties, covenants, or agreements between Seller and Buyer, or their representatives, with respect to the*

> *subject matter are hereby superseded*. The term "Purchase Order" as used herein means the first and continuation pages of Revere's completed Purchase Order form, including any special provisions contained therein. This agreement may not be modified except by mutual written agreement of the parties.

*See* Doc. 1-1, at 22-58 (emphasis added). To emphasize, paragraph 26 contains an integration clause – it expressly states that Revere's terms and conditions constitute the *entire agreement*, superseding all prior agreements. *Id*. The Restatement (Second) of Contracts explains, "[a] binding completely integrated agreement discharges prior agreements to the extent that they are within its scope." Restatement (Second) of Contracts § 213(2) (Am. Law Inst. 1981). Under Ohio law, "[a]n integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of their agreement." *Winton Savs. & Loan Co. v. Eastfork Trace, Inc.*, 2002 WL 1058146 (Ohio Ct. App.) (citing *Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 516-17 (Ohio 1980)). Thus, to the extent Plastic Plate argues the above-mentioned term within its quotes indicating that "[a]ny purchase order issued against this quotation will be considered as acceptance and acknowledgement of our quoted terms & conditions", prevents Revere from introducing its own terms and conditions within its Purchase Orders, this argument must fail. (Doc. 6-1, at 9).

In rebuttal to Plastic Plate's "non-resourcing" argument, Revere first argues that the "LIFE OF THE OEM PROGRAM" language is not an unambiguous commitment not to resource. In support, it points to this term within its Purchase Orders:

> 5.  **TERMINATION**. Buyer may terminate the Purchase Order for its convenience, in whole or in part, at any time prior to shipment by (written or electronic) notice to Seller. \*\*\*

*See, e.g.,* Doc. 1-1, at 22. This unambiguous term provides that Revere had the option to terminate each Purchase Order at any time, in whole or in part, "for its convenience". *Id*. Plastic Plate points to a "conflicting" term in quote 15-R602G which reads:

> 19. PPL commits to firm pricing hold for 5 years at start of first production shipments, assuming that the above stated production volumes meet a minimum EAU of at least 80% (Annual Customer Accepted Part Volumes: Washer Trim Ring – at least 140k; Dryer Trim Ring – at least 130k; Door Handle – at least 260k). If volumes do not meet this level, pricing will need to be reviewed.

(Doc. 6-6, at 9). However, Plastic Plate's cited term is nothing more than a five-year pricing commitment[4] – read plainly, it certainly does not constitute a "non-resourcing agreement" between the parties, even under the most generous interpretation. Therefore, the Court finds no conflict between these terms.

Finally, Revere notes that, contrary to Plastic Plate's implication, no contractual term (in the quotes or the Purchase Orders) obligated it to purchase the component parts *exclusively* from Plastic Plate. Plastic Plate does not point to an exclusivity agreement, nor has the Court identified one.

Plastic Plate further argues that Revere wrongfully omitted the "LIFE OF THE OEM PROGRAM" language from its 2017 Purchase Orders. In support, it points to Revere's stated term:

> 16. **BUYER'S TERMS AND CONDITIONS APPLY**. *No modification or release from this Purchase Order shall be binding unless agreed to in writing by the parties and specifically labeled as a modification or release.* Unless specifically

---

4. This term, as well as term three of Plastic Plate's quote cited above which provides that "pricing is based on Plastic Plate, LLC being awarded the complete production chrome volume for the Washer/Dryer Trim Ring/Handle and the sourcing of the tooling package listed above" (Doc. 6-1, at 4, 7, 8-9), speak directly to the pricing dispute surrounding Revere's breach of contract claim in Count One of the original Complaint (Doc. 1-1, at ¶23, 35, 52-58), as opposed to Plastic Plate's argument surrounding the resourcing issue brought by its Motion here (Doc. 38). Because the pricing dispute issues are not before the Court in Plastic Plate's Motion for Judgment on the Pleadings (Doc. 38), the Court does not address them at this juncture.

>agreed to otherwise by Buyer and Seller, these terms and conditions supersede any submitted by Seller in any proposal or acknowledgement.

*See* Doc. 1-1, at 29 (emphasis added). Plastic Plate argues that Revere's omission of this language in 2017 (after including it in the 2015 and 2016 Purchase Orders), constituted an improper modification and contends the 2017 Purchase Orders were therefore non-binding. (Doc. 38-1, at 12-13). Plastic Plate further argues this is proof that Revere knew it could not resource. As additional support, Plastic Plate cites Ohio Revised Code § 1302.12(B) (UCC § 2-209), which states that an "agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded[.]" *See* Doc. 40, at 5.

This argument can only succeed if the Court reads the Purchase Orders as one unit, not as separate agreements. If the Purchase Orders are read together, then the "no modification" term in the 2015 and 2016 Purchase Orders would prevent Revere from eliminating the "LIFE OF THE OEM" language in the 2017 purchase orders. However, if the 2017 Purchase Orders are separate agreements, independent of the 2015 and 2016 Purchase Orders, then the "no modification" term stated above only applies independently to each independent Purchase Order. Said another way, the "no modification" term only prevents the parties from modifying the terms within *that* particular order: price, quantity, product, etc. Because the Court reads the purchase orders (and the corresponding price quote) as *six separate agreements*, the Court finds that the omission of the "LIFE OF THE OEM" language was not an improper modification because each of the 2017 Purchase Orders represented a new agreement.

Moreover, as noted above, Plastic Plate continued shipping, thereby "accepting" the terms within each of the 2017 Purchase Orders. *See* Doc. 1-1, at 42, 45, 48 ("Seller's acknowledgment of the Purchase Order, shipment of any goods, or commencement of work pursuant to the Purchase Order shall be deemed an acceptance of this Purchase Order."). Plastic Plate also appears to argue

14

that the only reason it continued to perform under the 2017 Purchase Orders was because it did not read (or see) the forms. *See* Doc. 40, at 6 ("These altered POs were sent by Revere unilaterally. They arrived without warning. Revere sent them to one of PP's manufacturing facilities, mixed in with production releases. Revere did not send the new POs to PPs administrative offices."). However, as another judge in this district explained, claiming ignorance will not get a company very far: "[c]ontrary to Selective Way's argument, there is no requirement under the law that would excuse a sophisticated business entity from reading a new contract simply because of a prior course of dealing. Nor is there a requirement that a party to a contract specifically notify another of a provision contained in a contract." *Selective Way Ins. Co.*, 2018 WL 1871092, at *3 (citing *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 503 (1998) ("The law does not require that each aspect of a contract be explained orally to a party prior to signing.")). Consequently, this argument must fail.

*First Materially Breaching Party*

Revere argues in the alternative that even if the Court finds a single "supply agreement" existed, and said agreement obligated Revere to purchase the component parts from Plastic Plate for the entire life of Whirlpool's Alpha Program, Plastic Plate's Motion for Judgment on the Pleadings still fails because it was the first materially breaching party. Because as discussed above, the "single supply agreement" argument fails, the Court need not reach this alternative argument.

## Conclusion

For the foregoing reasons, the Court finds there are sufficient facts pled to show that no "non-resourcing" commitment existed between the parties, and thus Plastic Plate is not entitled to Judgment on the Pleadings on its Counterclaim under Rule 12(c). The Court therefore GRANTS

15

Revere's Motion to Strike (Doc. 41) and DENIES Plastic Plate's Motion for Judgment on the Pleadings as to its counter-claim (Doc. 38).

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　 s/ James R. Knepp II
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge