# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **REVERE PLASTIC SYSTEMS, LLC,** | Case No. 3:18 CV 2757 |
| Plaintiff/Counter-Defendant, | |
| v. | Magistrate Judge James R. Knepp II |
| **PLASTIC PLATE, LLC,** | |
| Defendant/Counter-Plaintiff. | MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Revere Plastic Systems, LLC (hereinafter "Revere"), filed a Complaint alleging: breach of contract (Count One), conversion (Count Three), willful damage or theft (Count Four), tortious interference with a business relationship (Count Five), and unjust enrichment (Count Six) against Plastic Plate, LLC. (Doc. 1-1, Complaint). Revere further requested declaratory judgment (Count Two), and attorney's fees (Count Seven). *Id*. Plastic Plate counter-claimed, alleging a single breach of contract claim. (Doc. 25, Amended Counter-Complaint). Jurisdiction is proper under 28 U.S.C. § 1332. This case is before the undersigned on consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed. Civ. R. 73. (Doc. 18).

Currently pending before the Court is Revere's Motion for Judgment on the Pleadings as to Plastic Plate's Amended Counterclaim. (Doc. 46). Plastic Plate responded (Doc. 53), and Revere replied (Doc. 55). Also pending is Revere's Motion to Strike (Doc. 54), to which Plastic Plate responded (Doc. 56), and Revere replied (Doc. 57).

For the reasons stated below, Revere's Motion to Strike (Doc. 54) and Motion for Judgment on the Pleadings (Doc. 46) are GRANTED.

**BACKGROUND**

Viewing the facts in the Complaint (Doc. 1), the Answer (Doc. 6-1), and the Amended Counter-Complaint (Doc. 25), in the light most favorable to the non-moving party Plastic Plate, the background of this case is as follows:

At the time litigation began, Revere had been a specialty plastics manufacturer for over 50 years. (Doc. 1-1, at ¶11). At some point in 2015, Revere entered into a supply contract relationship with the Whirlpool Corporation ("Whirlpool"), for certain component parts relating to Whirlpool's washer and dryer program known as the "Alpha Program". *Id*. at ¶12-13. As part of the contract, Whirlpool directed that Revere use Plastic Plate as a supplier for certain component parts within the Alpha Program. *Id*. at ¶12. Revere then incorporated these component parts into larger assemblies which were sold to Whirlpool. (Doc. 25, at ¶9).

In 2015, Plastic Plate provided Revere with four separate quotes for these parts. (Doc. 6-1, at 4, 7, 8-9)[1]. Each quote had twenty "Terms/Conditions/Assumptions" listed at the bottom. *Id*. The following were included therein:

> 2.      Any purchase order issued against this quotation will be considered as acceptance and acknowledgement of our quoted terms & conditions.
>
> * * *
>
> 19.     PPL commits to firm pricing hold for 5 years at start of first production shipments, assuming that the above stated production volumes meet a minimum EAU of at least 80% (Annual Customer Accepted Part Volumes: Washer Trim Ring – at least 140k; Dryer Trim Ring – at least 130k; Door Handle – at least 260k). If volumes do not meet this level, pricing will need to be reviewed.

*Id*.

---

1. Only the fourth and final of these quotes, marked "15-R602G", is at issue. (Doc. 6-1, at 9).

*2015 Purchase Orders*

In October 2015, Revere issued three Blanket Purchase Orders for the Alpha Program parts ("2015 Purchase Orders"). (Doc. 1-1, at ¶13); *see also* Doc. 1-1, at 21-29 (Exhibit 1). On the face of each, Revere included the following language:

> BLANKET P.O. ISSUED FOR FUTURE RELEASES-LIFE OF OEM[2] PROGRAM. . . IN ACCORDANCE WITH OEM CONTRACTS, PRICE CHANGES WILL ONLY BE ALLOWED AT THE BEGINNING OF THE QUARTER OF CALENDAR YEAR OR AS CONTRACTS PERMIT.

(Doc. 1-1, at 21, 24, 27). Each also references Plastic Plate's quote number "15-R602G". *Id.*; *see also* Doc. 6-1, at 9 (quote 15-R602G). Additionally, each Purchase Order had two pages of "Terms and Conditions" attached. *See* Doc. 1-1, at 21-29 ("Revere Industries, LLC Purchase Order General Terms and Conditions") (capitalization altered). These "Terms and Conditions" (identifying Revere as "Buyer", and Plastic Plate as "Seller") were incorporated by reference and contained the following relevant provisions:

> 1.    **OFFER AND ACCEPTANCE**. This Purchase Order constitutes an offer by Revere Industries, LLC (the "Buyer") to purchase from the addressee (the "Seller") the goods or services identified on the Purchase Order on the terms and conditions set forth below. This is not a firm offer, and Buyer may revoke it at any time prior to acceptance by Seller. Seller's acknowledgment of the Purchase Order, shipment of any goods, or commencement of work pursuant to the Purchase Order shall be deemed an acceptance of this Purchase Order and all its terms and conditions. ***
>
> * * *
>
> 3.    **ATTACHMENTS**. Documents designated by Buyer in the body of the Purchase Order, including supplemental terms and conditions, if any, are incorporated by reference the same as if set out in full therein.
>
> 4.    **CHANGES**. The Buyer reserves the right at any time to issue a written change order or amendment to the Purchase Order concerning any of the following: (a) specifications, drawings, and data incorporated in the Purchase Order where the items to be furnished are to be specially manufactured for the Buyer; (b) quantity; (c) methods of shipment or packaging; (d) place of delivery, (e) time of delivery; or (f) any other matters affecting this Purchase Order.

---

2. "OEM" stands for "Original Equipment Manufacturer", which is Whirlpool.

5.      **TERMINATION**. Buyer may terminate the Purchase Order for its convenience, in whole or in part, at any time prior to shipment by (written or electronic) notice to Seller. ***

* * *

16.      **BUYER'S TERMS AND CONDITIONS APPLY**. No modification or release from this Purchase Order shall be binding unless agreed to in writing by the parties and specifically labeled as a modification or release. Unless specifically agreed to otherwise by Buyer and Seller, these terms and conditions supersede any submitted by Seller in any proposal or acknowledgement.

* * *

21.      **REMEDIES**. In the event this Purchase Order is not complied with in any respect, Buyer may exercise any one or more of the following remedies: (a) cancel this Purchase Order; (b) require replacement of the goods; (c) recover all loss, damage and expense (including consequential damages) resulting from such failure by set-off or otherwise; (d) return excess of early deliveries to Seller at Seller's expense; (e) require delivery by any means and (f) exercise any other available remedy. Seller shall pay or otherwise be liable for any transportation, labor and/or other expense incurred in connection with the foregoing, including Buyer's attorneys' fees, costs and other changes incurred in connection with Buyer's exercise of Buyer's remedies.

* * *

26.      **ENTIRE AGREEMENT**. Unless superseded by a specific signed agreement between Buyer and Seller, this agreement shall include the Purchase Order, these General Terms and Conditions, and all attachments referred to in the Purchase Order or in the General Terms and Conditions, and it shall constitute the entire agreement of the parties with regard to the subject matter contained herein. All other prior or contemporaneous representations, warranties, covenants, or agreements between Seller and Buyer, or their representatives, with respect to the subject matter are hereby superseded. The term "Purchase Order" as used herein means the first and continuation pages of Revere's completed Purchase Order form, including any special provisions contained therein. This agreement may not be modified except by mutual written agreement of the parties.

*Id*. at 22-23, 25-26, 28-29. From October 2015 through April 2016, Plastic Plate shipped the

product as requested by Revere in the 2015 Purchase Orders. (Doc. 1-1, at ¶16); (Doc. 6, at ¶16).

*2016 Purchase Orders*

In April 2016, Revere issued three updated Blanket Purchase Orders to Plastic Plate for the

Alpha Program ("2016 Purchase Orders"). (Doc. 1-1, at ¶17); *see also* Doc. 1-1, at 31, 34, 37

(Exhibit 2). Each Purchase Order contained language identical to that identified above in the 2015

Purchase Orders regarding the "LIFE OF THE OEM PROGRAM" and had the same Terms and Conditions attached. *See* Doc. 1-1, at 31-39; Doc. 6-1, at ¶18. The 2016 Purchase Orders did not reference a specific Plastic Plate quote number. *See* Doc. 1-1, at 31-39. Plastic Plate again shipped the product as requested throughout 2016. (Doc. 1-1, at ¶20); (Doc. 6-1, at ¶20).

*2017 Dispute*

In March 2017, Whirlpool informed Plastic Plate that Whirlpool intended to resource the Alpha Program. (Doc. 1-1, at ¶22); (Doc. 6-1, at ¶21-22); (Doc. 25, at ¶16). Whirlpool also directed Revere to begin using a different supplier. (Doc. 1-1, at ¶22); (Doc. 6-1, at ¶22). In response, Plastic Plate contacted Revere and advised that if it "facilitated or cooperated with the resourcing, it would be in breach of the Supply Contract" (Doc. 25, at ¶17). Plastic Plate asserts that Revere "facilitated or cooperated" with the resourcing, completing the process in March 2018. *Id.* at ¶18. Plastic Plate contacted Revere in April 2017 informing it that the decision to resource (whether at Whirlpool's direction or not) amounted to a breach of contract. (Doc. 6-6, at ¶23). Given the breach, Plastic Plate demanded all sums due by Revere immediately, and any payments for shipments occurring thereafter would need to be made in advance. *Id.* Revere demanded Plastic Plate continue to perform under the 2016 Purchase Orders, arguing Plastic Plate had no authority to unilaterally alter the terms. (Doc. 1-1, at ¶25). After Revere's demand to continue performance, Plastic Plate eventually resumed shipping under the prices and quantities set forth in the 2016 Purchase Orders, but demanded cash in advance. *Id.* at ¶26; (Doc. 6-1, at ¶25).

*2017 Purchase Orders*

In October 2017, Revere issued six "updated" Blanket Purchase Orders to Plastic Plate for the Alpha Program ("2017 Purchase Orders"). *Id.* at ¶27; *see also* Doc. 1-1, at 41, 44, 47, 50, 53, 56 (2017 Purchase Orders). These purchase orders were not identical to the 2015 or 2016 Purchase

Orders because they omitted the "LIFE OF THE OEM PROGRAM" language contained in the prior orders. *See* Doc. 1-1, at 41, 44, 47, 50, 53, 56; (Doc. 6-1, at ¶28). However, each of the 2017 Purchase Orders contained the same attached Terms and Conditions. *See* Doc. 1-1, at 41-58. Notably, three of the 2017 Purchase Orders contained Plastic Plate's quote number "15-R602G" (*Id*. at 41, 44, 47), and three did not (*Id*. at 50, 53, 56). Plastic Plate asserts the 2017 Purchase Orders were sent to its factory address, instead of its administrative offices as requested; and as Revere had done before with the 2015-2016 Purchase Orders. (Doc. 6-6, at ¶27). From October 2017 through March 2018, Plastic Plate shipped the products as requested by Revere in the 2017 Purchase Orders. (Doc. 1-1, at ¶32-33).

*2018 Dispute*

In early 2018, Revere notified Plastic Plate that its refusal to ship threatened to cause a shutdown of Whirlpool's production for the Alpha Program. *Id*. at ¶38. Revere paid Plastic Plate approximately $571,626.41 that it owed in order to prevent supply interruption. *Id*. at ¶42; (Doc. 6-1, at ¶42). Upon receiving the payment, Plastic Plate released Revere's inventory. (Doc. 1-1, at ¶43); (Doc. 6-1, at ¶43).

## STANDARD OF REVIEW

In reviewing a motion for judgment on the pleadings, the Court tests the complaint's legal sufficiency. "The standard of review applicable to a motion for judgment on the pleadings . . . is the same . . . standard applicable to a motion to dismiss under Rule 12(b)(6)." *Hayward v. Cleveland Clinic Found*., 759 F.3d 601, 608 (6th Cir. 2014) (citing *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 511–12 (6th Cir. 2001)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[T]he court primarily considers the allegations in the

complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the non-moving party. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

**DISCUSSION**

<u>Motion to Strike (Doc. 54)</u>

In its Response (Doc. 53) to Revere's motion, Plastic Plate attached an affidavit and several emails which are not contained in the original pleadings. *See* Docs. 53-1 through 53-10. Revere then filed a Motion to Strike (Doc. 54), arguing the materials are improper on a motion under Federal Rule of Civil Procedure 12(c). As it did in its previous Motion to Strike (Doc. 41), Revere argues the Court should either: (1) strike the offending materials; or (2) convert motion to one for summary judgment, and provide Revere an opportunity to respond with its own extrinsic evidence. (Doc. 54, at 2-3). Plastic Plate responded (Doc. 56), arguing the Court may consider the materials as "course of performance evidence" in evaluating the Motion for Judgment on the Pleadings because they demonstrate disputed issues of fact.

This is Plastic Plate's second attempt to introduce materials outside of the pleadings for consideration on a motion for judgment on the pleadings under Federal Civil Rule 12(c), and Revere's second motion to strike in response. *See* Docs. 41, 42. The Court previously explained the applicable law, but repeats it here for good measure: when presented with materials outside of the pleadings, the Court retains the discretion to either: (1) strike the offending materials; or (2) consider the materials and convert the motion to one for summary judgment under Federal Civil

7

Rule 56. *See Max Arnold & Sons, LLC, v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Prac. & Proc. § 1371 (3d ed. 2004).

The evidentiary materials presented by Plastic Plate in its Response are indeed outside of the pleadings and improperly presented in response to a Federal Civil Rule 12(c) motion. In support of their inclusion, Plastic Plate argues the Ohio Uniform Commercial Code ("Ohio UCC") permits consideration of such evidence as "course of performance evidence" which explain the terms of a written agreement for the sale of goods. (Doc. 56, at 2-12) (citing O.R.C. § 1302.05) ("Terms. . . set forth in a writing intended by the parties as a final expression of their agreement. . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented by course of performance[.]"). Plastic Plate's position misses the mark. First, and perhaps most obviously, Plastic Plate cites an Ohio substantive law to support its argument that it did not violate federal procedural rules – an Ohio law that has nothing to do with the rules governing federal pleadings. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (J. Stevens, concurring) ("It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Second, the Ohio UCC provision cited by Plastic Plate does not address "course of performance evidence" as it relates to pleadings; rather, it speaks to the admissibility of parol evidence for a court's consideration in later proceedings where parties are able to properly introduce such extrinsic evidence. Even then, the statute expressly excludes parol evidence in situations where "the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.". O.R.C. § 1302.05; *see also id.* (Official Comment 3) ("If the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court, then evidence of their alleged making

must be kept from the trier of fact."). As set forth more completely below, the undersigned finds this agreement contains an integration clause, identifying certain writings as "the entire agreement of the parties with regard to the subject matter contained [t]herein". (Doc. 1-1, at 23).

Plastic Plate also cites *Albert Fadem Trust v. American Electric Power Co., Inc*., 334 F. Supp. 2d 985, 995 (S.D. Ohio 2004), to support its contention that "a court may properly consider not only the pleadings, but documents 'embraced by the pleadings'". (Doc. 56, at 11). *Albert Fadem Trust* is distinguishable. Notably, the case involves securities fraud, and the Southern District of Ohio, recognizing the unique nature of securities pleading, found that "[t]he requirements of pleading, the standard of assessment, *and the scope of the court's consideration* [] are somewhat different in securities fraud cases." *Albert Fadem Trust*, 334 F. Supp. 2d at 995 (emphasis added). The Southern District, following clear precedent in a series of *securities* cases, held that a court could "consider the full texts of SEC filings, prospectuses, analysts' reports and other documents *referred to in the complaint*, regardless of whether they [were] attached in part or whole." *Id*. (emphasis added). Notably, the emails and affidavit Plastic Plate seeks to introduce here are not referred to in its Counter-Complaint (Doc. 8), Amended Counter-Complaint (Doc. 25), nor its Answer (Doc. 6). Further, Plastic Plate's "embraced by the pleadings" language comes from *In re K-tel International, Inc. Securities Litigation*, 300 F.3d 881, 889 (8th Cir. 2002) – a case cited by *Albert Fadem Trust* to reinforce the notion that *certain* outside materials in securities cases can be considered. The outside materials "embraced by the pleadings" referenced in *K-tel*, and the series of other securities cases cited by *Albert Fadem*, involve securities related documents such as public records, SEC filings, and accounting statements. *See In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d at 892 (referencing accounting statements and Form 10-Q reports as they related to Financial Accounting Standard 121 violations); *see also In re Royal Appliance Sec. Litig.*, 1995

WL 490131, at *2 (6th Cir.) ("Finally, we may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached, without converting the motion into one for summary judgment under Rule 56.") (internal quotation omitted). This case does not involve securities litigation and Plastic Plate is not attempting to introduce public filing documents, prospectuses, reports, or statutes as an element of a crime or to demonstrate fraud – it is attempting to introduce emails and an affidavit to interpret a contract.

For these reasons, the Court exercises its discretion and *again* strikes the offending materials and considers the motion as originally filed for judgment on the pleadings under Federal Civil Rule 12(c).

Motion for Judgment on the Pleadings (Doc. 46)

In its Motion for Judgment on the Pleadings (Doc. 46), Revere argues Plastic Plate's counter-claim fails as a matter of law, resurrecting many of its legal arguments made in response to Plastic Plate's prior Motion for Judgment on the Pleadings in (Doc. 38). In its prior order, the Court made several legal determinations which addressed many of Revere's arguments. In its response, Plastic Plate also resurrects many of the same arguments made in its previous Motion for Judgment on the Pleadings (Doc. 38). The Court will follow a nearly identical legal path here, often repeating, and sometimes clarifying, its findings. Thus, for the reasons contained herein, the Court GRANTS Revere's Motion for Judgment on the Pleadings as to Plastic Plate's Amended Counterclaim (Doc. 46).

Revere argues Plastic Plate's counterclaim (Doc. 25) fails as a matter of law for several reasons. It notes that Plastic Plate's single breach of contract claim necessarily assumes a finding of three substantive allegations: (1) the parties had a single supply contract; (2) Revere was obligated to purchase all Alpha Program parts from Plastic Plate and could not resource; and (3)

Revere cooperated with Whirlpool's resourcing directive, thereby breaching the supply contract. (Doc. 46, at 2). Revere contends Plastic Plate's breach of contract counterclaim fails because the Court previously made legal determinations as to these three points which are fatal to the claim. *Id*. The Court agrees, addressing each of Revere's arguments in turn.

*The Single "Supply Agreement" Argument*

To reiterate, under Ohio law, the essential elements of a contract include: an offer, acceptance, the manifestation of mutual assent, and consideration. *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc*., 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004) (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)). Contract interpretation is a question of law. *Maurer v. Joy Tech.*, 212 F.3d 907, 914 (6th Cir. 2000); *Ignazio v. Clear Channel Broad., Inc*., 865 N.E.2d 18, 21-22 (Ohio 2007) ("But the interpretation of a contract is a matter of law that we review de novo."). And "[t]he intent of the parties is best determined by the plain language of the contract." *U.S. v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003). "Ordinary words in a written contract must be 'given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Quest Workforce Sols., L.L.C. v. Job1USA, Inc.*, 75 N.E.3d 1020, 1031 (Ohio Ct. App. 2016) (*quoting Alexander v. Buckeye Pipe Line Co*., 374 N.E.2d 146, 148 (Ohio 1978)). Contract interpretation becomes a question of fact only "when an ambiguous term necessitates the introduction of extrinsic evidence to interpret the contract." *Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. of Educ*., 872 N.E.2d 322, 329 (Ohio Ct. App. 2007) (citing *Rongone v. Ohio Mach. Tool & Design, Inc*., 1991 WL 35101, at *2 (Ohio Ct. App.)); *Donovan*, 348 F.3d at 512 ("The question of whether the language of an agreement is ambiguous is a question of law. Once the language of the contract has

been held to be ambiguous, the interpretation of such language is a question of fact that turns on the intent of the parties.") (internal citations omitted).

Central to Plastic Plate's counter-claim is the assertion that a single "supply agreement" or "supply contract" existed between the parties. Plastic Plate uses the term "supply contract" numerous times. *See generally* Doc. 25. It alleges the "supply contract" consisted of: (1) Plastic Plate's price quotes; and (2) Revere's Purchase Orders (as one unit, not singly). (Doc. 25, at ¶11-14). Plastic Plate argues that, under the "supply contract", Revere had a fully enforceable contractual obligation not to resource the component part manufacturing to another supplier as evidenced by the "LIFE OF THE OEM PROGRAM" language in Revere's 2015/2016 Purchase Orders, and Revere breached said agreement by "facilitat[ing] or cooperat[ing] with resourcing" production. (Doc. 25, at ¶14-17); (Doc. 53, at 16-17). As the Court previously held – no single "supply contract" ever existed. (Doc. 43, at 10-11). This determination was key because – as discussed below – Plastic Plate's counter-claim can only survive if the Court read the Purchase Orders as one unit, not as separate agreements. The Court has already made a determination to the contrary.

The Court's previous rationale surrounded the issue of incorporation. "To incorporate a document, [a] contract 'must explicitly, or at least precisely, identify the written material [being] incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'" *Selective Way Ins. Co. v. Glasstech, Inc.*, 2018 WL 1871092, at *2 (N.D. Ohio) (quoting *Volovetz v. Tremco Barrier Sols.*, 74 N.E.3d 743, 751-52 (Ohio Ct. App. 2016)). Here, Plastic Plate's price quote "15-R602G" appears on the face of half of the Purchase Orders. *See* Doc. 1-1, at 21, 24, 27, 41, 44, 47. This price quote specifically subjects any Purchase Orders issued therefrom to its stated terms and conditions:

> 2.      Any purchase order issued against this quotation will be considered as acceptance and acknowledgement of our quoted terms & conditions.

*See* Doc. 6-1, at 9. Language within Revere's Purchase Orders also (unambiguously) incorporates the quotations:

> 3.      **ATTACHMENTS**. Documents designated by Buyer in the body of the Purchase Order, including supplemental terms and conditions, if any, are incorporated by reference the same as if set out in full therein.

(Doc. 1-1, at 22, 25, 28, 42, 45, 48). For these reasons, the Court concluded that Plastic Plate quote 15-R602G, and Revere's Purchase Orders which reference it (Doc. 1-1, at 21, 24, 27, 41, 44, 47), should be read together. (Doc. 43, at 10).

The next relevant question previously addressed by the Court then became: are these documents one single "supply agreement" as Plastic Plate contended, or did each Purchase Order (with the incorporated quote) stand on its own as a separate contract? (Doc. 43, at 10-11). Under Ohio law – which mirrors the Uniform Commercial Code ("UCC") – each Purchase Order constitutes a separate "offer to buy goods for prompt or current shipment" and "invit[es] acceptance in any manner and by any medium reasonable in the circumstances" – in this case "by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." O.R.C. § 1302.09 (UCC § 2-206); *see also Am. Bronze Corp. v. Streamway Prods.*, 456 N.E.2d 1295, 1300 (Ohio Ct. App. 1982) ("Generally, the submission of a purchase order is viewed as being an offer which then may be accepted or rejected by the seller."). Here, Revere presented Plastic Plate with twelve separate Purchase Orders (Doc. 1-1, at 21-58), which Plastic Plate "accepted" *individually* through performance by shipping the products in the type and quantity requested by *each* separate order (Doc. 1-1, at ¶16, 20, 26, 32-33). Thus, the Court previously determined Revere's six Purchase Orders which reference Plastic Plate quote 15-R602G (Doc. 1-

1, at 21, 24, 27, 41, 44, 47), were *six separate contracts* each consisting of: (1) the quote; and (2) the Purchase Order. (Doc. 43, at 11).

*The "Non-resourcing Agreement"*

Further, Plastic Plate's breach of contract counter-claim rests on the foundation that specific language within its price quote, and the Purchase Orders, established a "non-resourcing agreement" and Revere breached said agreement by resourcing the parts. But again, the undersigned already held to the contrary.

In support, Plastic Plate points to the language in Revere's 2015-16 Purchase Orders:

BLANKET P.O. ISSUED FOR FUTURE RELEASES-LIFE OF OEM PROGRAM. . . IN ACCORDANCE WITH OEM CONTRACTS, PRICE CHANGES WILL ONLY BE ALLOWED AT THE BEGINNING OF THE QUARTER OF CALENDAR YEAR OR AS CONTRACTS PERMIT.

(Doc. 1-1, at 21, 24, 27, 31, 34, 37). Plastic Plate alleges this "LIFE OF OEM PROGRAM" language constitutes an "unambiguous commitment not to resource". (Doc. 53, at 16-18).

However, as the Court previously determined, a review of these documents revealed which terms and conditions control. (Doc. 43, at 11-15). To recap, Revere's Purchase Orders expressly note:

16.    **BUYERS TERMS AND CONDITIONS APPLY**. No modification or release from this Purchase Order shall be binding unless agreed to in writing by the parties and specifically labeled as a modification or release. *Unless specifically agreed to otherwise by Buyer and Seller, these terms and conditions supersede any submitted by Seller in any proposal or acknowledgement.*

* * *

26.    **ENTIRE AGREEMENT**. Unless superseded by a specific signed agreement between Buyer and Seller, this agreement shall include the Purchase Order, these General Terms and Conditions, and all attachments referred to in the Purchase Order or in the General Terms and Conditions, and it shall constitute the entire agreement of the parties with regard to the subject matter contained herein. *All other prior or contemporaneous representations, warranties, covenants, or agreements between Seller and Buyer, or their representatives, with respect to the subject matter are hereby superseded.* The term "Purchase Order" as used herein means the first and continuation pages of Revere's completed Purchase Order form,

including any special provisions contained therein. This agreement may not be modified except by mutual written agreement of the parties.

*See* Doc. 1-1, at 22-58 (emphasis added). And, as this Court previously determined, paragraph 26 contains an integration clause – it expressly states that Revere's terms and conditions constitute the *entire agreement*, superseding all prior agreements. *Id.*; (Doc. 43, at 11-12). The Restatement of Contracts explains, "[a] binding completely integrated agreement discharges prior agreements to the extent that they are within its scope." Restatement (Second) of Contracts § 213(2) (Am. Law Inst. 1981). Under Ohio law, "[a]n integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of their agreement." *Winton Savs. & Loan Co. v. Eastfork Trace, Inc.*, 2002 WL 1058146 (Ohio Ct. App.) (citing *Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 516-17 (Ohio 1980)).

In rebuttal to Plastic Plate's "non-resourcing" argument, Revere again argues that the "LIFE OF THE OEM PROGRAM" language is not an unambiguous commitment not to resource. (Doc. 46, at 10-12). In support, it points to this term within its Purchase Orders:

> 5.    **TERMINATION**. Buyer may terminate the Purchase Order for its convenience, in whole or in part, at any time prior to shipment by (written or electronic) notice to Seller. ***

*See, e.g.*, Doc. 1-1, at 22. This unambiguous term provides that Revere had the opinion to terminate each Purchase Order at any time, in whole or in part, "for its convenience". *Id*. Plastic Plate points to a "conflicting" term in quote 15-R602G which reads:

> 19.    PPL commits to firm pricing hold for 5 years at start of first production shipments, assuming that the above stated production volumes meet a minimum EAU of at least 80% (Annual Customer Accepted Part Volumes: Washer Trim Ring – at least 140k; Dryer Trim Ring – at least 130k; Door Handle – at least 260k). If volumes do not meet this level, pricing will need to be reviewed.

(Doc. 6-6, at 9). However, Plastic Plate's cited term is nothing more than a five-year pricing commitment – read plainly, it certainly does not constitute a "non-resourcing agreement" between

the parties, even under the most generous interpretation. Therefore, the Court previously found no conflict between these terms – they are clear and unambiguous. (Doc. 43, at 11-13).

Plastic Plate argues the Purchase Orders also "include (at the very least) an implicit promise from Revere to purchase the component parts exclusively from Plastic Plate." (Doc. 53, at 18) (quoting Doc. 6-1, at 4 ("All pricing is based on Plastic Plate, LLC being awarded the complete production chrome volume for the Washer/Dryer Trim Ring/Handle and the sourcing of the tooling package listed above.")). A plain reading reveals this, like term 19 quoted above, is nothing but an unambiguous pricing commitment contained within the price quote. Revere counters that, contrary to Plastic Plate's interpretation, no contractual term (in the quotes or the Purchase Orders) obligated it to purchase the component parts *exclusively* from Plastic Plate. The Court agrees.

Plastic Plate further argues that Revere wrongfully omitted the "LIFE OF THE OEM PROGRAM" language from its 2017 Purchase Orders. (Doc. 53, at 18-24). In support, it points to Revere's stated term:

> 16. **BUYER'S TERMS AND CONDITIONS APPLY**. *No modification or release from this Purchase Order shall be binding unless agreed to in writing by the parties and specifically labeled as a modification or release*. Unless specifically agreed to otherwise by Buyer and Seller, these terms and conditions supersede any submitted by Seller in any proposal or acknowledgement.

*See* Doc. 1-1, at 29 (emphasis added). Plastic Plate argues that Revere's omission of this language in 2017 (after including it in the 2015 and 2016 Purchase Orders), constituted an improper modification of the 2015 and 2016 Purchase Orders and contends the 2017 set were therefore non-binding. (Doc. 38-1, at 12-13). Plastic Plate further argues this is proof that Revere knew it could not resource. As additional support, Plastic Plate cites Ohio Revised Code § 1302.12(B) (UCC §

2-209), which states that an "agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded[.]" *See* Doc. 40, at 5.

However, this argument can only succeed if the Court reads the Purchase Orders as one unit, not as separate agreements. If the Purchase Orders are read together, then the "no modification" term in the 2015 and 2016 Purchase Orders would prevent Revere from eliminating the "LIFE OF THE OEM PROGRAM" language in the 2017 Purchase Orders. However, if the 2017 Purchase Orders are separate agreements, independent of the 2015 and 2016 Purchase Orders, then the "no modification" term stated above only applies independently to each independent Purchase Order. Said another way, the "no modification" term only prevents the parties from modifying the terms within *that* particular order: price, quantity, product, etc. Because the Court previously determined that the purchase orders (with their corresponding price quotes) are *six separate agreements*, the Court finds that the omission of the "LIFE OF THE OEM PROGRAM" language was not an improper modification of the 2015/2016 orders because each of the 2017 Purchase Orders represented a new agreement.

Plastic Plate also alleges there was no "meeting of the minds" as to the 2017 Purchase Orders because it did not lawfully "accept" delivery of the 2017 Purchase Orders. (Doc. 53, at 20-22). In support, it notes the Ohio UCC provides that "[s]hipment of parts will not constitute acceptance of a purchase order under the UCC if otherwise indicated by the circumstances." (Doc.

53, at 20) (citing O.R.C. § 1302.09). Its paraphrased citation is only minimally accurate, leaving out a few critical phrases. In its entirety, the statute reads:

(A) *Unless otherwise unambiguously indicated by the language* or circumstances:

(1) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(2) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such *a shipment of non-conforming goods does not constitute an acceptance* if the seller reasonably notifies the buyer that the shipment is offered only as an accommodation by the buyer.

(B) Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance.

O.R.C. § 1302.09 (emphasis added). As noted, only shipment of *non-conforming goods* does not constitute acceptance. *Id.* (emphasis added). There is no allegation here by either party the goods were non-conforming. Further, Plastic Plate continued shipping under the *unambiguous* terms stated in each of the 2017 Purchase Orders that allow shipment of any goods to be deemed as an acceptance. *See* Doc. 1-1, at 42, 45, 48 ("Seller's acknowledgment of the Purchase Order, *shipment of any goods*, or commencement of work pursuant to the Purchase Order shall be deemed an acceptance of this Purchase Order.") (emphasis added). Here, unambiguous terms – precisely the type contemplated by Plastic Plate's cited UCC provision – allow for shipment of goods to constitute acceptance of a purchase order.

Plastic Plate also argues that the only reason it continued to perform under the 2017 Purchase Orders was because it did not read (or see) them. *See* Doc. 40, at 6 ("These altered POs were sent by Revere unilaterally. They arrived without warning. Revere sent them to one of PP's manufacturing facilities, mixed in with production releases. Revere did not send the new POs to

PPs administrative offices."); (Doc. 53, at 20) (arguing Plastic Plate did not accept the 2017 Purchase Orders because they neither received, nor signed them) (citing Doc. 6, at ¶31). However, as this Court previously held, claiming ignorance will not get a company very far: "[c]ontrary to Selective Way's argument, there is no requirement under the law that would excuse a sophisticated business entity from reading a new contract simply because of a prior course of dealing. Nor is there a requirement that a party to a contract specifically notify another of a provision contained in a contract." (Doc. 43, at 15) (quoting *Selective Way Ins. Co.*, 2018 WL 1871092, at *3 (citing *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 503 (1998) ("The law does not require that each aspect of a contract be explained orally to a party prior to signing.")). Consequently, this argument must fail.

To emphasize, the Court finds the terms and conditions contained in the price quotes and purchase orders submitted in the pleadings by both parties are unambiguous. Where no ambiguity exists, contract interpretation is a matter of law. *Donovan*, 438 F.3d at 512. Here, when reviewing the documents, the reader is guided through a series of terms and conditions which – at first glance – may seem as though they conflict, leading one to think the contractual obligations were less than clear. With a closer look, however, it becomes readily apparent that they do not. This is the Court's second review of the pleadings and, with this reconsideration, its holdings are unchanged.

Motion to Amend the Amended Counter-Complaint

In a footnote in Plastic Plate's Response, it asks that it be allowed to amend its amended counter-complaint to include extrinsic evidence, should the Court grant Revere's motion to strike. (Doc. 53, at 15-16, n.3) ("Plastic Plate should at the very least be allowed the opportunity to amend its counterclaim to more explicitly present the factual questions at issue."). In support, Plastic Plate contends precedent allows for such. While Plastic Plate is correct the Sixth Circuit has held that

"where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). However, "[d]enial may be appropriate [] where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For the following reasons, Plastic Plate's request to amend is DENIED.

! *Futility*

A court "may not use extrinsic evidence to create an ambiguity; the ambiguity must be 'apparent on the face of the contract.'" *Donovan*, 348 F.3d at 512; *see also Shifrin v. Forest City Enterprises, Inc*., 597 N.E.2d 499, 501 (Ohio 1992) (holding that if no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity) (citing *Stony's Trucking Co. v. Pub. Util. Comm.*, 290 N.E.2d 565, 567 (Ohio 1972)). As the Court detailed above, allowing Plastic Plate to file a second amended counter-complaint to add emails and affidavits would be an exercise in futility because the Court found no ambiguity in the documents, making the issue at hand purely a question of law.

*Notice*

In support of its position, Plastic Plate cites *United States ex rel. Bledsoe v. Community Health Systems, Inc*., 342 F.3d 634, 644 (6th Cir. 2003) for the proposition that a plaintiff must be given at least one chance to amend a complaint before a district court dismisses it. (Doc. 53, at 15, n.3). However, in *Bledsoe*, the Sixth Circuit held the district court erred in denying a motion to

amend because the party was not provided sufficient notice, prior to dismissal, that its complaint was defective such that it did not comply with the particularity requirements of Federal Civil Rule 9(b) (Pleading Special Matters). 342 F.3d at 645. To the contrary here, Plastic Plate had ample notice its Amended Counter-Complaint (Doc. 25) was deficient at the time this Court issued its previous order on August 5, 2019. This is so primarily because Plastic Plate attempted to introduce many of the same emails and affidavits in its prior motion for judgment on the pleadings. *See* Doc. 40. Plastic Plate then argued the materials were "central" or "integral" to its pleading. (Doc. 42, at 5-6). The Court then concluded, as it does now, that the materials were extrinsic, improperly presented, and struck them. (Doc. 43, at 7-8). Plastic Plate could have moved to file a second amended counter-complaint after reading the Court's holding, but, for whatever reason, chose not to. Instead, Plastic Plate attempted to introduce many of the same materials a second time in response to Revere's motion here. *See* Doc. 53. Plastic Plate goes so far as to say "this is the first time that Plastic Plate's counterclaim has been challenged by way of motion." (Doc. 53, at 16, n.3). This is not entirely accurate as Plastic Plate previously sought judgment on this same amended counter-complaint which was challenged by way of Revere's opposition to that motion. *See* Doc. 38 (Plastic Plate's Motion for Judgment on the Pleadings as to its amended counter-complaint).

Because Plastic Plate had ample notice its amended counter-complaint was deficient (Doc. 25) and the Court finds that the addition of the extrinsic materials would be futile, the Court DENIES Plastic Plate's motion to amend its counter-complaint for a second time.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Revere's Motion to Strike (Doc. 54) and

Motion for Judgment on the Pleadings as to Plastic Plate's Amended Counterclaim (Doc. 46).


**IT IS SO ORDERED.**


 s/ James R. Knepp II
United States Magistrate Judge